UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――x

BASIA GOSZCZYNSKA
a/k/a BARBARA FEDOROWICZ,     Civ. No. 22-09345-ER

        Plaintiff,     **AMENDED VERIFIED COMPLAINT**

  -against-

ARCADIA EARTH LLC and     Jury Trial Demanded
INFORMA MARKETS FASHION
(EAST) LLC,

        Defendants.
―――――――――――――――――――――――――――x

Plaintiff Basia Goszczynska a/k/a Barbara Fedorowicz, through her undersigned attorneys, asserts the following Amended Complaint against the above-named Defendants:

## NATURE OF THE ACTION

1.    This is an action brought by the Plaintiff against the named Defendants relating to (a) the misappropriation and destruction of Plaintiff's artwork, and its use by Defendants without proper credit and attribution, in violation of the Visual Artists Rights Act of 1990 (VARA), (Pub. L. 101–650, Title VI, 17 U.S.C. § 106A) and (b) violations of state law, including the conversion of her art works, negligence, gross negligence, intentional infliction of emotional distress, and breach of contract.

## PARTIES

2.    Plaintiff **BASIA GOSZCZYNSKA** a/k/a BARBARA FEDOROWICZ is a widely recognized artist based in New York City, who works in sculpture and other art forms, using recycled plastic and other discarded items to create works of art designed to remind and inspire

her fellow planetary citizens of the importance of creating and maintaining a sustainable environment. She received her bachelor's degree in Fine Arts (BFA) from the School of the Art Institute of Chicago, and her Masters in Fine Arts (MFA) from the Mason Gross School of the Arts at Rutgers University. Plaintiff has presented her work in numerous solo and group exhibitions at various venues in New York City, Miami Las Vegas, Saudi Arabia and elsewhere.

3. Defendant **ARCADIA EARTH LLC** ("Arcadia Earth") is a Delaware corporation registered to do business in New York as a foreign corporation. Arcadia Earth opened a permanent art exhibit ("Arcadia Earth NYC" or "Arcadia Earth New York") at 718 Broadway in Manhattan in September 2019, which includes a major art work by the Plaintiff, known as *Rainbow Cave.* Arcadia Earth's agent for service of process in New York is Registered Agents Inc., 418 Broadway, Suite R, Albany, New York.

4. Defendant **INFORMA MARKETS FASHION (EAST) LLC** ("Informa Markets") is a Delaware corporation doing business in New York, which owns and operates various shows and exhibitions, including the Coterie Show in September 2022 at the Jacob K. Javits Convention Center in New York City, which featured a modern sculptural work by the Plaintiff, known as *Gleam*. The two Informa Markets employees who served as Event Production & Design Managers for the Coterie Show in September 2022 were Lauren Guerrere and Marco Innocenti.

**JURISDICTION AND VENUE**

5. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that some of Plaintiff's claims arise under the Visual Artists Rights Act of 1990 (VARA), (Pub. L. 101–650, Title VI, 17 U.S.C. § 106A).

2

6.	Pursuant to 28 U.S.C. § 1332, this Court also has diversity jurisdiction over this matter since the Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. The Plaintiff is a citizen of New York State, and the Defendants are citizens of Delaware.

7.	Venue is proper in this District under 28 U.S.C. §1391(b) since Plaintiff and Defendants transact business within this District, and a substantial part of the acts and omissions giving rise to this action occurred in the Southern District of New York.

8.	This Court has supplemental jurisdiction over Plaintiff's state law and common law claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

9.	Plaintiff demands a trial by jury on all causes of action so triable.

## FACTUAL BACKGROUND

10.	Plaintiff first became associated with Arcadia Earth in June 2019, when she met with Valentino Vettori ("Vettori"), the Founder of Arcadia Earth, and two of his colleagues. The subject of their discussion was the commissioning of an artwork by Plaintiff for the new Arcadia Earth New York exhibition at 718 Broadway in Manhattan. Vettori mentioned that he had seen Plaintiff's plastic bag sculptures and asked if she could create an immersive space using the same technique. Plaintiff agreed to do so.

11.	Plaintiff then conceptualized the *Rainbow Cave* artwork, referencing Plato's *Allegory of the Cave* and the scriptural story about the great flood and the rainbow from the Book of Genesis.

12. In July and August 2019, Plaintiff produced the *Rainbow Cave* (edition #1) at the Arcadia Earth New York exhibition space.

13. In September 2019, Arcadia Earth New York opened to the general public. Even though Plaintiff was originally told that the *Rainbow Cave* work would only be on view for a few months, the work was open to the public for more than three years. During that time period, the work fell into disrepair, since Arcadia Earth failed to maintain it properly.

14. In December 2019, Arcadia Earth commissioned Plaintiff to present *Rainbow Cave* (edition #2) at the One Hotel Miami Beach during the Miami Art Basel week. The work was returned to Plaintiff after the completion of the project.

15. In May 2021, Arcadia Earth commissioned plaintiff to present a *Rainbow Cave* (edition #3) at the Ithra Museum in Saudi Arabia. During a trip to the Middle East, Plaintiff experienced a rebirth and resurgence of her Christian beliefs. Upon her return to New York, she had a telephone conversation with Valentino Vettori of Arcadia Earth, advising him that the Christian references in her work were likely to be more explicit. She wanted Arcadia Earth to be aware of her artistic perspective so that if they were going to continue to present her work, Vettori and other Arcadia Earth personnel would not be surprised as to which direction she was going. Vettori assured her that this would be "no problem." Since then, every Instagram post by Plaintiff about her work has included references to her Christian beliefs.

16. Despite Plaintiff's repeated reminders to Arcadia Earth and its personnel that they could not use photographs of her work without giving her proper accreditation, Arcadia Earth continued to use photographs of Plaintiff's work, *Rainbow Cave,* on its website and Instagram account without proper accreditation.

17. In November 2021, Arcadia Earth commissioned Plaintiff to present *Rainbow Cave* (edition #4) at their new location in Las Vegas, Nevada.

18. In June 2022, Arcadia Earth, in partnership with Polygon Studios, commissioned Plaintiff to present *Gleam* at NFTNYC at the Marquis Marriott Hotel in Time Square for $50,000. Arcadia Earth paid for the first month of storage after this show, but thereafter, Plaintiff paid the storage fees for *Gleam* from July 15, 2022 to September 15, 2022.

19. On August 30, 2022, Arcadia Earth confirmed with Plaintiff that they were commissioning her to re-show *Gleam* at the Coterie Show, the premier trade event for contemporary and advanced contemporary women's apparel, scheduled to take place at the Javits Convention Center. Plaintiff agreed to present the work at the discounted rate of $25,000. Valentino Vettori of Arcadia Earth assured Plaintiff during a phone conversation that the networking opportunities for her at the show would more than make up for the fact that she was presenting the work for a discounted fee. He further promised Plaintiff that she would be allowed to represent herself and her art throughout the entire show, alongside Arcadia Earth's VR activation, and that this would be "an opportunity to create a space together to build conversations about sustainability."

20. From August 31, 2022 to September 14, 2022, Plaintiff produced an additional piece for *Gleam*, with the booth for this exhibit to be set up differently than the prior version, requiring Plaintiff and her assistants to make many additional pieces in order to cover the extra surface areas.

21. On September 15, 2022, the installation of *Gleam* began at the Jacob K. Javits Convention Center, with Plaintiff being assisted by three assistants and several unionized skilled laborers. Plaintiff and her crew worked from 9 am until they were required to leave at 6 pm.

22. The following day, on September 16, 2022, a large section of plastic required for *Gleam* was thrown out by the Javits Center housekeeping staff, which set back the installation of the project. Plaintiff worked on the installation from 7 am to 7 pm.

23. On September 17, 2022, Plaintiff arrived at the Javits Center at 8 am, and did not leave until the following day. She took a one-hour nap at 3 am, and then worked from 4 am until the show opened that morning.

24. Between 8 am and 9 am, Plaintiff was delighted to see that fig and palm trees had been delivered to surround her artwork, so she started talking to her co-workers and others in the surrounding area about the spiritual connections between the presence of these trees and her *Gleam* sculptural work. She further mentioned that she believed Jesus had foreshadowed his own death when he told the fig tree to wither. She also expressed the view that the "divine feminine" was symbolically represented in the palm branches that welcomed Jesus into Jerusalem. Plaintiff further said that it was amazing that the graphics provided by Arcadia Earth at the entrance of the booth (the sculptural elements of which were *Gleam*) had the words "Energy" on the right side and "Water" on the left, because her work of late had been very much about the need for balance when thinking about sustainability issues. She also expressed the belief that "Energy" speaks to the concept of a Holy Spirit (which was made incarnate in Jesus), and that "Water" speaks to the concept of Living Water (which was made divine in Mary). Earlier in the week, Plaintiff had made a video about the Holy Water and the Holy Spirit, so these ideas and concepts were fresh in her

mind. She kept working on the completion of the installation of *Gleam* while openly talking with her colleagues and people who passed by about her ideas and beliefs.

25.     After a while, Valentino Vettori approached Plaintiff and expressed annoyance about the way that she was speaking so openly about her Christian beliefs. He told her to stop doing so, referring to her *Gleam* artwork as "my booth," referring to Arcadia Earth. He specifically directed her not to talk about her faith when talking about sustainability.

26.     At approximately 9:40 am on September 18, 2022, when Plaintiff was getting ready to leave to get some rest before coming back later that day, Vettori approached her again, saying he wanted to talk to her "in private." Plaintiff expressed the view that she did not feel safe doing so because of the false statements that Vettori had been making that morning to the effect that he (i.e. Arcadia Earth) "owned the booth," which included the sculptural elements of *Gleam*. She told him, in front of two of their colleagues, that she wanted to have witnesses to their conversation and didn't see any reason to go elsewhere since she thought that he should be able to say whatever it was that he wanted to say to her in front of their colleagues. In response, Vettori became even more upset, saying that he didn't want her at the show at all and that he was going to ask the directors of the show to have her expelled. Plaintiff responded by saying that she was willing to wait until the show directors arrived to discuss the matter.

27.     Upon the arrival of Marco Innocenti and Lauren Guerrere – the two Event Production & Design Managers of the Coterie Show who were employees of Informa Markets – Valentino Vettori told them that he did not want Plaintiff to attend the show, despite the fact that part of her compensation agreed to was that she would have a three-day pass to the show so she could attend every day and represent herself as an artist networking with industry leaders. Vettori also stated that he was afraid that her Christian spiritual beliefs would offend other show attendees

who did not share her faith, especially Jewish and Muslim people. Plaintiff was shocked by these comments, especially since she has a brother-in-law who is Muslim, and one of her best friends is Jewish. She also felt that the verbal statements she shared with others about her faith and its connection to the message of environmental sustainability that they were trying to convey was done in an extremely respectful and humble manner.

28. When Valentino Vettori and Marco Innocenti adamantly insisted that Plaintiff be ejected from the event, she reluctantly agreed, but stated that, since Arcadia Earth and the Coterie Show organizers (i.e., Informa Markets) were breaching their agreement with her, i.e., that she could attend the entire three-day event with a pass provided by the Show so that she could freely network, she would be taking her artwork *Gleam* with her. Plaintiff reasoned that if a clothing designer had been forced to leave the show, he/she would be allowed to take their clothing and design samples with them. However, Vettori and Innocenti insisted that she leave her artwork behind, to which Plaintiff took the position that she did not feel comfortable having her artwork presented to the public by Vettori and others associated with Arcadia Earth, since it was plainly apparent that they would censor and silence anyone, such as her, who did not adhere to the narrow confines of their message of sustainability, stripped of any faith-based environmental dimension.

29. Plaintiff was shocked when the Show managers from Informa Markets agreed with the Arcadia Earth position that Plaintiff be ejected from the Show, but forced to leave behind her artwork.

30. Valentino Vettori and the Coterie Show directors then called the assistance of security officers of the Jacob K. Javits Convention Center ("Convention Center"), whereupon Plaintiff climbed up on her ladder and started taking down her work. When the security guards arrived, and told her to stop taking down her artwork, and ordered her to come down off the ladder,

she grew even more emotionally upset and tried to explain to them that the artwork was hers and that she was taking it down for good reason. People associated with the Coterie Show, Arcadia Earth, and the Convention Center started telling the Plaintiff that she could not continue taking down her work, and this caused her to become even more upset. Since a small crowd had gathered by this time, Plaintiff began to shout over the voices of the Convention Center security personnel and the representatives of Arcadia Earth and Informa Markets who were telling her to come down because she wanted witnesses to see what was happening to her. She explained to them why she was taking down her work, why she was so upset, and expressed again her intentions of taking her work down. She was told that the police had been called, and since she did not feel safe coming down without the police present, she spent the time waiting for them by preaching to the crowd. Since Plaintiff had a great respect for law enforcement officers, when a Convention Center security officer showed her his badge and ordered her to come down, she immediately came down from the ladder and calmly explained to him what had happened, and why she felt it necessary to take down her artwork. The security officer seemed to empathize with her, but told her that she could not continue taking down any more of her artwork until the police arrived. While waiting, the Plaintiff sat down, listened to music, and stretched. Finally, some police officers arrived and escorted her from the premises. The Plaintiff expressed concern about leaving her artwork behind, and that she feared it would be destroyed, but reluctantly complied with the decision of Informa Markets, as the organizer and representative of the Coterie Show, and Arcadia Earth that she leave without her artwork. She was then escorted from the Convention Center by security personnel and law enforcement officers.

31.   Plaintiff's fears for the safety of her artwork *Gleam* proved to be well founded when, at the conclusion of the Show, her concerns expressed for the safety of her artwork were

ignored, and her artwork *Gleam* was substantially destroyed by Convention Center personnel, with the participation of Arcadia Earth and Informa Markets personnel, who actively aided and abetted, and conspired with, Convention Center personnel. Plaintiff was only able to recover a few remnants of her work.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Violations of VARA)

32. Plaintiff repeats and reiterates each and every foregoing paragraph of this Complaint as though fully set forth herein.

33. The Visual Artists Rights Act of 1990 ("VARA"), (Pub. L. 101–650 Title VI, 17 U.S.C. § 106A), amends the U.S. copyright laws by protecting the moral rights of artists with regard to works of visual art. Among other things, VARA (a) protects artists' rights of authorship of their works, (b) prevents the distortion, mutilation or modification of any work in a way that would be prejudicial to the artist's honor or reputation, and (c) prohibits the intentional or grossly negligent destruction of a work of recognized stature.

34. VARA provides protection for a "work of visual art" defined as a "painting, drawing, print, or sculpture, existing in a single copy…" 17 U.S.C.A. § 101. *Gleam* falls squarely within the protection of VARA in that it is a sculpture, existing in a single copy only.

35. Defendants Arcadia Earth and Informa Markets (hereinafter sometimes collectively referred to as "the Defendants") violated 17 U.S.C. § 106A(a)(3)(A) of VARA by intentionally distorting, mutilating, and otherwise modifying (and/or by aiding and abetting and/or conspiring with Convention Center personnel in the distortion, mutilation and/or modification of) Plaintiff's sculpture *Gleam* on display at the Coterie Show at the Convention Center in a way prejudicial to Plaintiff's honor and reputation, as the artistic creator and author of this piece of modern sculpture.

36. Specifically, Defendants intentionally distorted, mutilated, and otherwise modified Plaintiff's sculpture *Gleam* while on display at the Coterie Show by presenting it at the exhibition in a manner prejudicial to Plaintiff's honor and reputation. Plaintiff explicitly informed Defendants that any works created by her going forward would incorporate certain religious elements, to which Defendants took no issue. By preventing Plaintiff from presenting *Gleam* at the Coterie Show in a manner consistent with her artistic vision, and indeed presenting it in her absence in the vision of Arcadia Earth, Defendants violated Plaintiff's moral rights in a manner that cut to the core of her artistic vision and attribution and integrity rights.

37. Defendants violated 17 U.S.C.A. § 106A(a)(3)(B) of VARA through their intentional and/or grossly negligent destruction of *Gleam* (and/or by aiding and abetting and/or conspiring with Convention Center personnel in the distortion, mutilation and/or modification of *Gleam)*, a work of visual art of recognized stature.

38. Specifically, Defendants abandoned *Gleam* at the Coterie Show following its conclusion, after ignoring Plaintiff's attempts to retrieve the sculpture. Defendants knew that abandoning *Gleam* in the Convention Center was tantamount to its destruction; it is the typical operation known to all involved in exhibitions such as the Coterie Show that the quick turnover of events at convention centers means that any exhibits left behind will be removed from the premises and destroyed. As such, Defendants are responsible for, and aided and abetted, the intentional destruction of *Gleam*.

39. In the event that Defendants cannot be said to have intentionally destroyed *Gleam*, their acts of preventing Plaintiff from retrieving the sculpture and intentional abandonment constitute, at the very least, grossly negligent destruction.

40. *Gleam* is a sculpture of recognized stature in that (a) it has stature as a meritorious piece of work, and (b) is recognized by art experts and other members of the artistic community. See *Carter v. Helmsley-Spear, Inc.,* 861 F. Supp. 303, 325 (S.D.N.Y. 1994), aff'd in part, vacated in part, rev'd in part, 71 F.3d 77 (2d Cir. 1995).

41. 17 U.S.C.A. § 106A(a)(1) provides that the author of a work of visual art shall have the right "to claim authorship of that work."

42. Defendants flagrantly and repeatedly used photographs and images of Plaintiff's artwork on their websites and other media materials without proper attribution or credit to Plaintiff, in violation of her VARA moral right to attribution.

43. As a result, Defendants are liable to Plaintiff for damages in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Conversion)

44. Plaintiff repeats and reiterates each and every foregoing paragraph of this Complaint as though fully set forth herein.

45. In New York, the elements required for the cause of action of conversion are: (a) intent, (b) interference to the exclusion of the owner's rights, and (c) possession in contravention of plaintiff's rights.

46. Under New York law, a conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession. See *Colavito v. New York Organ Donor Network, Inc.,* 8 N.Y.3d 43, 49–50 (2006)

47. Two elements are essential for a conversion: (a) plaintiff's possessory right or interest in the property, and (b) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights. *Colavito,* 8 N.Y.3d at 50.

48. Further, "[e]ven where possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand." *Core Dev. Grp. LLC v. Spaho,* 199 A.D.3d 447, 157 N.Y.S.3d 416, 419 (1st Dept. 2021) (internal citations omitted).

49. Defendants Arcadia Earth and Informa Markets wrongfully converted – and aided and abetted and/or conspired with Convention Center personnel in converting – Plaintiffs artwork by, among other things, intentionally taking, possessing and refusing to return upon reasonable demand Plaintiff's artwork in a manner that interfered with her property rights as the lawful owner of her artwork, and who was also entitled to proper attribution and recognition as the artist.

50. As a result, Plaintiff suffered compensatory and other damages in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Negligence)

51. Plaintiff repeats and reiterates each and every foregoing paragraph of this Complaint as though fully set forth herein.

52. Under New York law, a plaintiff must demonstrate the following elements in order to sustain a negligence claim; (a) a duty owed by the defendant to the plaintiff, (b) a breach of that duty, and (c) injury proximately resulting therefrom. *Pasternack v. Laboratory Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (2016), rearg. denied, 28 N.Y.3d 956, 38 N.Y.S.3d 525 (2016).

53. Defendants Arcadia Earth and Informa Markets, as custodians of Gleam during the Coterie Show, owed a duty of care to Plaintiff not to unreasonably damage her artwork and to allow Plaintiff reasonable opportunity to remove *Gleam* from the Convention Center.

54. In not allowing Plaintiff to retrieve *Gleam*, and subsequently intentionally abandoning and aiding and abetting in the destruction of *Gleam*, Defendants breached their duty to Plaintiff.

55. Defendants' breach of duty was the proximate cause of economic damages to Plaintiff amounting to the value of her property right interest in *Gleam*. But for Defendants' intentional abandonment of *Gleam*, it would not have been destroyed and Plaintiff would not have suffered the economic damages alleged.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Gross Negligence)**

56. Plaintiff repeats and reiterates each and every foregoing paragraph of this Complaint as though fully set forth herein.

57. Under New York law, for a party to be liable for gross negligence, their conduct must constitute "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821, 823–24 (1993).

58. Defendants Arcadia Earth and Informa Markets were grossly negligent in failing to maintain, protect, preserve and store Plaintiff's artwork. Their conduct rises above the level of ordinary negligence in that they were provided with the explicit opportunity, by Plaintiff, to allow her to remove *Gleam* from the Convention Center, on multiple occasions. In failing to not only

take reasonable care of *Gleam*, and in intentionally ignoring attempts by Plaintiff to retrieve it, Defendants evinced a reckless disregard for Plaintiff's property rights that amounts to the legal equivalent of intentional wrongdoing and a gross deviation from the requisite standard of care.

59. As a result, Plaintiff is entitled to damages in an amount to be determined at trial.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**

60. Plaintiff repeats and reiterates each and every foregoing paragraph of this Complaint as though fully set forth herein.

61. New York law provides for a cause of action for intentional infliction of emotional distress if the following elements are met: (a) extreme and outrageous conduct; (b) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (c) a causal connection between the conduct and injury; and (d) severe emotional distress. *Drimer v. Zionist Org. of Am.,* 194 A.D.3d 641, 642, 150 N.Y.S.3d 48, 50 (1st Dept. 2021).

62. The conduct of Defendants Arcadia Earth and Informa Markets, when viewed in its appropriate context, amounts to extreme and outrageous conduct. Among other instances, this conduct includes: (a) Arcadia Earth's (through Valentino Vettori) assurances to Plaintiff that she would be permitted to incorporate religious elements into her work going forward; (b) Arcadia Earth's assurances that Plaintiff would not only be provided with a three-day pass to the Coterie Show (in exchange for a discounted price) but also that she would be permitted to present her work as she saw fit at the Show, and (c) Arcadia Earth's subsequent reneging on these assurances and ultimately, in conjunction with Informa Markets, directing that Plaintiff be removed from the venue by Convention Center security personnel and law enforcement officers for exercising her federal and constitutional rights.

63. The conduct of Defendants Arcadia Earth and Informa Markets was intended to cause, or at least disregarded a substantial probability of causing, – and did cause – Plaintiff to suffer severe emotional and psychological distress.

64. As a result, Plaintiff is entitled to damages in an amount to be determined at trial.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Contract – Against Defendant Arcadia Earth Only)

65. Plaintiff repeats and reiterates each and every foregoing paragraph of this Complaint as though fully set forth herein.

66. New York law recognizes a cause of action for breach of contract, the elements of which are: (a) the existence of an enforceable contract, (b) the plaintiff's performance pursuant to that contract, (c) the defendant's breach of the contract, and (d) damages resulting from that breach. *Nassau Operating Co., LLC v. DeSimone*, 206 A.D.3d 920, 926, 171 N.Y.S.3d 528, 535 (2d Dept. 2022).

67. Plaintiff entered into an enforceable contract with defendant Arcadia Earth when the parties agreed that she would create *Gleam* at the discounted rate of $25,000 for the upcoming Coterie Show at the Convention Center. The discounted rate reflected the additional term to the contract that Plaintiff would be provided with a three-day pass to the Show so as to have the opportunity to conduct valuable networking.

68. Plaintiff fully performed pursuant to the contract when she created *Gleam* on time for the beginning of the Coterie Show.

69. Defendant Arcadia Earth breached the contract by not only having Plaintiff removed from the Coterie Show for presenting *Gleam* in line with their vision and agreement

(Plaintiff had previously notified Defendants of her religious incorporations going forward), and thus depriving her of three days of lucrative networking prospects, but also in their intentional abandonment of Gleam that led to its destruction.

70. Plaintiff suffered substantial economic damages, not only in being deprived of her property right in *Gleam* itself, but the considerable networking prospects foregone as a result of her exclusion from the Coterie Show.

WHEREFORE Plaintiff respectfully requests the following relief:

a. On Plaintiff's Causes of Action One through Six, an award of compensatory and punitive damages; and

b. A grant of such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 14, 2023

Respectfully submitted,

McCALLION & ASSOCIATES LLP

*/s/Kenneth F. McCallion*

_____
Kenneth F. McCallion (KM 1591)
Attorneys for Plaintiff
100 Park Avenue – 16th floor
New York, New York 10017
Tel: (646) 366-0884

VERIFICATION

BASIA GOSZCZYNSKA a/k/a Barbara Fedorowicz, affirms and verifies the following under penalty of perjury:

1. I am the Plaintiff in this action and am fully familiar with the facts of this matter.

2. I have read the foregoing Complaint and find its contents to be true and correct, except as to those matters asserted upon information and belief, and as to those matters I believe them to be true and correct.

Dated: February 14, 2023

_____
BASIA GOSZCZYNSKA
a/k/a Barbara Fedorowicz,